DAVID SHARPE *et al.*, plaintiffs in error, *vs.* WRIGHT KENNEDY *et al.*, defendants in error.

When a bill is filed praying an injunction against the enforcement of a judgment at law, and the judge, after a hearing on a rule to show cause why a temporary injunction until a final hearing should not be granted, refuses the injunction, this court will not interfere to control his discretion unless there be an error of law, or unless the right of the complainant is, under the facts, plain and manifest.

Injunction.   Before Judge KIDDOO.   Terrell county.   At Chambers.   December 29th, 1873.

David Sharpe and Farnham & Sharpe, composed of William W. Farnham and James P. Sharpe, filed their fill against Wright Kennedy and Charles C. Brown, sheriff, upon the following state of facts:

On the 27th day of January, 1871, complainants became security for Leroy Brown on a promissory note, of which the following is a copy:

"$800 00.   On or before the 15th day of November next, we promise to pay Wright Kennedy, or bearer, eight hundred dollars, for value received, January 27th, 1871.

- (Signed)                         " LEROY BROWN,
                                   " DAVID SHARPE, sec'y,
                                   " FARNHAM & SHARPE.
" Interest at two per cent. a month."

The memorandum at the foot of the note was put there by the principal and payee of said note after complainants had signed the same and left the room, without their knowledge or consent, and is and was no part of their contract of suretyship.   Cotemporaneously with the signing of said note the principal, Leroy Brown, in order further to secure the note and to indemnify the securities thereon, executed a deed conveying to Kennedy in fee simple, several lots in the town of Dawson, three of which were known as the "hotel lots." The note was not paid at maturity, and was sued to judgment at the November term, 1872, of Terrell superior court, upon which a *fi. fa.* was issued against Brown and Farnham & Sharpe, as joint principals, returnable to the May term, 1873.   The fact that complainants were only securities was well known to Kennedy, both when the note was signed and when judgment was taken. The deed given to the payee was ample security, and he knew that complainants relied upon said deed to indemnify them against the principal, for although they knew that the legal

title to the "hotel lots" was not in Brown, and never had been, the other property conveyed in said deed was more than enough to pay off the note even upon a forced sale. Before any levy was made under said *fi. fa.*, and in order to protect themselves and save further delay, complainants, through the agency of James P. Sharpe, on or about the 7th day of April, 1873, tendered to Wright Kennedy and his attorney, F. M. Harper, Esq., in the office of said Harper, in Dawson, the full amount of principal, interest and costs due on said *fi. fa.*, and at the same time demanded a transfer of the judgment, and also demanded the other security in his hands, by giving them a deed to the property which their principal had conveyed to Kennedy to secure the payment of said debt. Leroy Brown was present, and consented for this deed to be made, and it was fully "within the power" of said Kennedy to have made the deed as demanded.

The tender was in good and lawful money of the United States, and was enough to pay off the entire debt. No objection was made to the kind of money, the mode of tender, or its sufficiency, but Kennedy and his attorney, F. M. Harper, Esq., refused to take the money, saying to James P. Sharpe, "You need not count the money; it will not be accepted unless you pay the full amount of interest we claim," or words to that effect, placing their refusal upon the sole ground that Kennedy was entitled to more interest than the judgment called for, viz : interest at the rate of two per cent. per month, as expressed in the memorandum on the note. On the same day, Kennedy, in bad faith toward complainants, executed a deed conveying the whole of the property held as security back to Brown, in which deed there was no reservation whatever, and no recital that it was made for a particular purpose. The property thus re-conveyed was then levied on as the property of Leroy Brown, and at the same time two other lots of land in Terrell county were levied on as the property of James P. Sharpe. As soon as this last deed was made, and before the property could be sold by the sheriff, the wife of Leroy Brown applied for and obtained a "home-

stead" in all the land to which her husband held a good title, and had "exempted" all his personal property, and thus defeated the collection of said judgment out of the principal. Between the execution of the deed from Brown to Kennedy and the re-conveyance back to Brown, other judgments were obtained against him older than that of Kennedy *vs.* Brown and complainants, which, in a contest between judgments, might have taken the money to the manifest injury of the securities. Leroy Brown has become utterly insolvent, and been adjudged a bankrupt within the past four months. F. M. Harper, Esq., attorney for Wright Kennedy, is also attorney for Leroy Brown in the matter of his bankruptcy. Kennedy is now proceeding against the property of complainant Sharpe alone, and has caused to be advertised for sale by the sheriff of Terrell county, on the first Tuesday in January, 1874, two lots of land belonging to him. The bill prays an injunction against Wright Kennedy and Charles C. Brown, sheriff, restraining them from selling the land of James P. Sharpe, and restraining all other proceedings under said *fi. fa.* until the further order of the court.

The defendant, Wright Kennedy, filed his answer, in substance, as follows: Admits the loan of the money as set out in the bill, but said he knew nothing of Farnham & Sharpe being only securities on said note. Set up that W. W. Farnham was the officious man in procuring the loan; that it was his confidence in Farnham & Sharpe that induced him to part with his money, and that Farnham & Sharpe used the money and got the benefit of it. Did not know whether the memorandum on the note was put there before or after the signing of the same, but did know that Mr. Farnham got the money and agreed to give respondent that rate of interest. Admits taking the deed from Brown, and says that he gave Brown a "bond for titles" to re-convey the property on payment of the note with interest. Admits the suing of the note to judgment, and charges that no defense was made because Kennedy, through his attorney, promised complainant Farnham not to take judgment for more than lawful interest.

Admits that the *fi. fa.* was issued and levied as set out in the bill. Knew nothing of the value of the property conveyed to him by Brown, nor of the genuineness of Brown's title, but charges that Farnham, as an inducement for them to make the loan, told him that Brown's title was good, and that the property was worth far more than the amount of the note with interest. Knew nothing of complainants' relying on the deed to indemnify them, but charges the contrary, as Farnham claimed the most valuable piece of said property as his own. Admits that before any levy was made, Mr. Sharpe met him at the office of F. M. Harper, Esq., for the purpose of settling this debt. Says that he agreed to make the transfer of the judgment as demanded by said Sharpe, but that Sharpe also demanded a warrantee deed to the property he held as security, which respondent refused to give, having learned that there were executions against Brown prior to the date of the deed from Brown to respondent. Respondent offered to give a "quit claim" deed to the sureties, provided his bond for titles was given up, and Brown would consent. Denied that any tender was made to him by James P. Sharpe. He saw no money, and none was offered to him or his attorney, but Sharpe refused to pay except upon conditions, with which, as he was advised and believed, he could not comply. He further says that he told Sharpe he was willing to accept the $800 00, with interest from the date of the note, at seven per cent., but that Sharpe refused to agree to that, and left the office. Admitted making the deed back to Brown, but says it was not done in bad faith, but for the purpose of having the property levied on and sold to satisfy the *fi. fa.* On the 8th day of April said property was levied on and advertised for sale on the first Tuesday in May, 1873, and at the same time the same *fi. fa.* was levied on two lots of land belonging to James P. Sharpe. On the day of the sale a claim was interposed by W. W. Farnham to one-half interest in the "hotel lots" in the town of Dawson, which prevented said property from selling, the balance of Brown's property having been set aside as a home-

stead for his wife, long before the deed from respondent re-conveying the property to him. Sharpe interposed an affidavit of illegality to the sale of his property, and thus stayed proceedings on said *fi. fa.* until the May term, 1873, of the superior court, when it was dismissed. Pleads the judgment of the superior court of Terrell county upon the affidavit of illegality and the judgment of this court affirming it, in bar of this bill, upon the ground that the questions made are *res adjudicata*. Admits that Brown has filed his petition in bankruptcy, and that he, defendant, is trying to collect the money due on said *fi. fa.* out of complainant Sharpe, and that the property of Sharpe is advertised as set out in the bill.

Several affidavits were read in support of the bill and one in support of the answer. They are omitted as the case is sufficiently presented by the bill and answer.

The injunction was refused, and complainants excepted.

IRWIN & GRESHAM; HOYLE & SIMMONS, for plaintiffs in error.

F. M. HARPER, by RICHARD H. CLARKE, for defendants.

McCAY, Judge.

We are not prepared to say that there is not equity in the facts set forth in this bill. Under section 2155 of the Code, if the surety tender to the creditor the amount due, and demand the evidences of the debt and any securities the creditor may have, to be delivered to him, and the creditor fail to comply when within his power, this will operate to discharge the security. The language of the law is plain and positive.

As to control and possession of the *fi. fa.*, that goes to the security by operation of law on the payment, and if placed by the creditor in the hands of the sheriff, we do not think a transfer would be necessary. But it was, as we think, the duty of the creditor to pass the title of these lands to the security, Brown consenting; and did the case stand on the

Sharpe *et al. vs.* Kennedy *et al.*

charges in the bill alone we should feel compelled to reverse the judgment.

But the answer contradicts several of the material charges in the bill. It replies that the security demanded a warranty deed. He had no right to that. The answer also denies the tender, and this is supported by Harper's affidavit. Now we do not say that the money must have been counted out and offered by an outstretched hand to the creditor. But by the answer and by Harper's affidavit, there was no money offered; there was a proposition to pay on certain terms. A proposition to pay and a tender, are by no means the same thing. The former may exist without any element of the latter.

We do not feel that the evidence of a tender is sufficiently strong to justify us in reversing the judgment. It is the settled rule, that on questions of fact the evidence must be strongly against the judgment of the judge to authorize this court to reverse his judgment in injunction cases. We do not think the dismissal of the affidavit of illegality is a bar to a proceeding in equity, though it may be one of the facts which may operate on the mind of the judge to control his discretion in refusing the injunction. The putting in of so meagre and inconclusive an affidavit when the facts were as well known then as now, may have been a mere pretext for delay, and taken in connection with the conflict of the evidence, may have tended to incline the judge in favor of the plaintiff in *fi. fa.* We do not think the want of knowledge on the part of Kennedy at the time the money was loaned, as to who was the principal, was material. He had the notice at the time of the alleged tender, and he acted in this respect at his peril.

We simply refuse to reverse the judgment denying the injunction. If the facts are with the plaintiff he can so satisfy a jury, and if he has paid the money, or it has been collected out of him, the jury can decree its return. There is no allegation of Kennedy's insolvency, and the only harm that can happen is the use of the money, and *prima facie*, Kennedy is entitled to that by the judgment.

It may, however, be well enough to say that if it should

appear that this deed was at the time worthless—that is, if the property was as defendant says—all disposed of by a good homestead before this alleged tender was made, we do not decide that even a tender and refusal to make the deed would release the security. The deed and bond were in fact only a mortgage, and if that was at the time wholly inoperative by reason of the homestead, we incline to the opinion that the presumption of harm, or the chance that he might be harmed by the refusal, would be rebutted, and that the case in 37 *Georgia*, referred to in the argument, would be inapplicable. We would also say, in conclusion, that if, as defendant's answer shows, he was defrauded and misled by the complainants into accepting a deed from Brown to property that belonged to them, they do not come into a court of equity with much grace, and that Kennedy may give them a good deal of trouble by a levy on that property even if they be released as securities.

On the whole, we feel constrained to affirm the judgment denying the injunction.

Judgment affirmed.